UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CR-69 |
| | ) | (VARLAN/GUYTON) |
| JOHN REECE ROTH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Roth's Motion for Judgment of Acquittal [Doc. 67; *see also* Doc. 68] and Defendant Roth's Motion for New Trial [Doc. 69; *see also* Doc. 70]. The government responded in opposition to each of defendant's motions [Docs. 71; 72]. At the beginning of the initial sentencing hearing held on May 13, 2009, the Court announced that these motions were **DENIED**. The Court now files this written opinion to fully set forth reasons for the Court's denial of these motions.

**I.    ANALYSIS**

**A.    Defendant Roth's Motion for Judgment of Acquittal [Doc. 67]**

Rule 29(c) of the Federal Rules of Criminal Procedure governs a motion for a judgment of acquittal following a jury verdict or discharge. That rule permits the court to set aside a guilty verdict and enter a judgment of acquittal when the evidence is insufficient to sustain a conviction. Fed. R. Crim. Pro. 29(c)(2). When reviewing a criminal defendant's motion for a judgment of acquittal, the court "must determine 'whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *accord, e.g.*, *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005); *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

The Court must consider both circumstantial and direct evidence. *Humphrey*, 279 F.3d at 378. Indeed, "[c]ircumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)). However, in reviewing the evidence, the Court must not "weigh credibility so long as it is not factually insubstantial or incredible." *United States v. Welch*, 97 F.3d 142, 151 (6th Cir. 1999).

Defendant moves for a judgment of acquittal on the grounds that the evidence is insufficient to sustain a conviction under the Arms Export Control Act ("AECA") because (1) neither the Force Stand nor the data generated from the Phase II Contract was a "defense article" or "technical data relating to a defense article" as those terms are defined in Category VIII of the United States Munitions List ("USML"); (2) there was no evidence that the DARPA proposal was not the product of fundamental research with no restrictions on dissemination or publication; and (3) the evidence does not show that defendant willfully exported any technical data.

The government responded [Doc. 72] to defendant's motion for judgment of acquittal arguing that it presented more than sufficient evidence for a rational trier of fact to find all

2

of the elements of the crimes beyond a reasonable doubt. The government cites specifically to Government Exhibits 46A and 46B,[1] the testimony of Anthony Dearth of the Department of State, and the testimony of Jesse Crump of the Department of Defense as evidence sufficient to support a finding that the Force Stand and data in the identified documents in the indictment were defense articles of the type and nature listed on the USML. Citing to the testimony of Daniel Sherman and the defendant's own notes introduced as Government Exhibit 54, the government also argues that there was sufficient evidence to support a finding that defendant knew that the defense articles and technical data directly related to defense articles had been exported, that he did not have an export license, and that the information was subject to export control.

### 1. The Force Stand and the Data Generated from the Phase II Contract Were "Defense Articles" or "Technical Data Relating to a Defense Article"

Defendant argues that neither the Force Stand nor the data generated from the Phase II Contract were directly related to an aircraft specifically designed, modified, or equipped for military purposes, and thus, neither meet the definition of defense article or technical data under Category VIII of the USML. Defendant also argues that the Phase II Contract data cannot fit the definition of technical data because there was no proof that the University of Tennessee or any of its researchers accepted any restrictions on publication of the data.

---

[1] The government refers to the exhibits as 45A and 45B in its response, but from its description of the exhibits, it appears to the Court that the government intended to cite Exhibits 46A and 46B.

3

An essential element to each count of the indictment for which defendant was found guilty is that defense articles, defense services, or technical data were involved. Thus, if no rational trier of fact could have found that defense articles, defense services, or technical data were involved, the evidence is insufficient to support a judgment of guilty as to each count and a judgment of acquittal is appropriate.

Before addressing the substance of this matter, the Court must determine whether it is proper for it to review whether something is a defense article or defense service pursuant to 22 U.S.C. § 2778(h). Title 22 U.S.C. § 2778(h) states,

> The designation by the President (or by an official to whom the President's functions under subsection (a) of this section have been duly delegated), in regulations issued under this section, of items as defense articles or defense services for purposes of this section shall not be subject to judicial review.

Defendant argues that judicial review is appropriate under this section and the government argues that it is not. After reviewing the statutory language and the arguments of the parties, the Court determines that it is appropriate for the Court to determine if the government presented sufficient evidence for a reasonable trier of fact to determine whether the equipment and documents charged in the indictment fit into one of the defined categories of the United States Munitions List. The Court, however, finds it inappropriate to review the policy decision of whether a certain item or category of items should or should not be placed on the United States Munitions List. Thus, the Court will determine whether the government presented sufficient evidence for a rational trier of fact to find that data and information exported by the defendant were defense articles, defense services, or technical data.

4

> A "defense article" is:
>
> > Any item or technical data designated in the United States Munitions List, which includes aircraft and technical data and defense services directly related to military aircraft. The term includes technical data recorded or stored in any physical form, models, mockups or other items that reveal technical data directly relating to items designated on the united states munitions list. It does not include basic marketing information on function or purpose or general system descriptions.

*See* International Traffic and Arms Regulations ("ITAR"), 22 C.F.R. § 120.6. Technical data is defined as, "Information . . . which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles, [but not] information concerning general scientific, mathematical or engineering principles commonly taught in schools, colleges and universities or information in the public domain." *Id.* at § 120.10. Defense service means,

> The furnishing of assistance (including training) to foreign persons, whether in the United States or abroad in the design, development, engineering, manufacture, production, assembly, testing, repair, maintenance, modification, operation, demilitarization, destruction, processing or use of defense articles [and] The furnishing to foreign persons of any technical data controlled under [the United States Munitions List] whether in the United States or abroad.

*Id.* at § 120.9.

The category of the USML that applies to this case includes: "Aircraft, including but not limited to helicopters, non-expansive balloons, drones, and lighter-than-air aircraft, which are specifically designed, modified, or equipped for military purposes." *Id.* at § 121.1, Cat. VIII(a). Furthermore, "In Category VIII, aircraft means aircraft designed, modified, or equipped for a military purpose." *Id.* at § 121.3.

5

The government presented evidence that each of the items and documents named in the indictment had been subject to a determination that they were defense articles of the nature and type listed in the USML. This evidence included testimony from Jesse Crump, the Department of Defense employee who recommended that the State Department conclude that the data and other items were defense articles, the testimony of Anthony Dearth of the Department of State, and Government Exhibits 46A and 46B. Exhibit 46A is a document from the Department of State in which Robert S. Kovac, Managing Director or the Directorate of Defense Trade Controls, Bureau of Political-Military Affairs certifies that each of the items and documents named in the indictment are defense articles and technical data as defined by the ITAR. Exhibit 46B is a document from the Department of State in which Mr. Kovac certifies that after a diligent search, he found no export license or any other written approval granted to John Reece Roth regarding the export of any defense article or defense service during the period of October 1, 1996 to August 5, 2008. All of this evidence supports the jury's determination that defendant unlawfully exported defense articles and technical data.

Defendant argues that some of the evidence suggests that the items and documents were not defense services. He notes that Mr. Sherman testified that the design of the AGT actuators and the Force Stand were already in the public domain and that both Mr. Crump and Mr. Sherman stated that most of the data in the DARPA proposal was available in the public domain. Defendant further states that Mr. Crump admitted on cross-examination that he initially concluded that none of the items listed in the indictment were defense articles or

6

technical data. Mr. Crump also testified that the work of the Phase II project applied research results to a civilian aircraft with only the eventual goal being use on a military aircraft. Additionally, two witnesses, Captain Grigsby and Frederick Davis testified that the items described fell into other Categories of the USML, not Category VIII, which was the only category on which the jury was instructed.

Although defendant is correct that not all of the evidence supported a finding that the items listed in the indictment were defense articles or technical data, the standard for a judgment of acquittal is not whether there is some evidence supporting a different conclusion, but rather whether there is sufficient evidence to support the conclusion the jury did reach. Here, the Court finds that there was sufficient evidence and defendant's judgment of acquittal will not be granted on this basis.

> 2. **There Was Evidence That the DARPA Proposal Was Not the Product of Fundamental Research and That There Were Restrictions on Dissemination and Publication**

Defendant argues that there is no evidence that the DARPA proposal was not the product of fundamental research unrestricted by limitation on publication or dissemination rather than information that was already in the public domain other than that presented through the government's expert's testimony. As stated previously, technical data does not include "information concerning general scientific, mathematical or engineering principles commonly taught in schools, colleges and universities or information in the public domain." *Id.* at § 120.10. Thus, data that is in the public domain is not technical data and not export-controlled.

7

Defendant admits that Mr. Crump testified that the data in the DARPA proposal fell within Category VIII subpart (i) of the USML and there was no authorization for public release of the proposal. Government Exhibit 46A identifies the DARPA proposal as a defense article. Additionally, Government Exhibit 46B states that no export license was granted to defendant. Although Mr. Crump and Mr. Sherman each stated that most of the data in the DARPA proposal was available in the public domain, this testimony does not preclude a reasonable juror from concluding that the DARPA proposal was not the product of fundamental research based upon the remaining evidence. Accordingly, the government presented sufficient evidence for a reasonable trier of fact to find that the information contained in the DARPA Proposal was not the product of fundamental research and that there were restrictions on the dissemination and publication of it, and thus defendant's motion for acquittal will not be granted on this basis.

### 3. The Evidence Shows That Defendant Willfully Exported Technical Data

Defendant argues that there is insufficient evidence to conclude that defendant acted knowingly and willfully, and with the specific intent to violate a known legal duty given the complexity of the regulatory scheme and uncertainty in the application of the law. Defendant argues that he consistently expressed the understanding that the export restrictions did not apply to basic, fundamental research being conducted in the University of Tennessee Plasma Lab and at AGT, and that the export control restrictions only applied once the Air Force made a determination that the research was successful and could be applied to some military

8

article. Specifically in regard to the DARPA proposal, defendant states that there was no evidence that he ever opened the electronic document or was otherwise on notice that it contained export-controlled data.

As the jury was instructed, for a reasonable trier of fact to find that defendant acted knowingly and willfully, there must be sufficient evidence that the defendant voluntarily and intentionally violated a known legal duty. Specifically, the testimony of Mr. Sherman, among other evidence, indicated that defendant knew that he was sharing export-controlled defense articles with foreign nationals. Thus, the government presented sufficient evidence for a reasonable trier of fact to find that defendant knew that the information he allowed foreign nationals to access was export-controlled and that he knew he had a duty not to disclose export-controlled data. Accordingly, there was sufficient evidence for a reasonable trier of fact to find that he voluntarily and intentionally violated a known legal duty and defendant's motion for acquittal will not be granted on this basis..

For all the reasons just stated, Defendant Roth's Motion for Judgment of Acquittal [Doc. 67] will be denied.

### B. Defendant Roth's Motion for New Trial [Doc. 69]

Alternatively, defendant seeks a new trial, claiming that the jury was prejudiced by the Court's failure to give an instruction on ignorance of the law as a defense. Rule 33 of the Federal Rules of Criminal Procedure provides that, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Because the Court has broad discretion in drafting the jury charge, a new trial

9

should not be granted based upon the failure to include a requested jury instruction unless the jury charge fails to accurately reflect the law. *See United States v. Beaty*, 345 F.3d 617, 621 (6th Cir. 2001).

Prior to the Court charging the jury, the defendant submitted a proposed instruction on ignorance of the law as a defense and requested its inclusion in the charge to the jury at the charge conference. However, the Court ultimately decided not to give the instruction to the jury. Defendant argues because he was acting in a manner that he mistakenly believed complied with the law, he did not willingly disregard the law. He argues that, therefore, had the jury been instructed on ignorance of the law, it would have likely returned a verdict of not guilty.

The government responded [Doc. 71] stating that the defendant's requested charge is an incorrect statement of the law, and thus, it was proper for the Court to deny the defendant's request to give the instruction. The government acknowledges that there is some dispute among the circuits as to the meaning of willful in the context of the Arms Export Control Act ("AECA") and the Sixth Circuit has not addressed the issue directly, but it explains that the Court's instruction accurately reflects the majority view.

Prior to giving the jury the charge, the Court carefully considered whether to include the instruction on ignorance of the law as requested by the defendant and determined that the charge as drafted by defendant was inappropriate. The Court gave an instruction on willfulness:

10

> To prove that defendant acted knowingly and willfully, the government must prove beyond a reasonable doubt that the defendant voluntarily and intentionally violated a known legal duty. In other words, the defendant must have acted voluntarily and intentionally and with the specific intent to do something he knew was unlawful, that is to say, with intent either to disobey or disregard the law. Negligent conduct, or conduct by mistake or accident, or with a good faith belief that the conduct was lawful, is not sufficient to constitute willfulness.

The Court believes this instruction accurately and completely states the law on willfulness as it relates to the AECA and properly informed the jury of the level of knowledge defendant must have possessed. Additionally, the Court notes that this instruction informed the jury that conduct by mistake or with a good faith belief that the conduct was lawful does not constitute a willful violation of the law. Thus, defendant's complaint about the jury charge appears to be moot, at least in part. The Court finds that defendant was not prejudiced by its failure to include the instruction requested by the defendant regarding ignorance of the law, and Defendant Roth's Motion for New Trial [Doc. 69] will be denied.

## II.     CONCLUSION

For the reasons stated herein, Defendant Roth's Motion for Judgment of Acquittal [Doc. 67] and Defendant Roth's Motion for New Trial [Doc. 69] are hereby **DENIED**.

IT IS SO ORDERED.

                          s/ Thomas A. Varlan
                          UNITED STATES DISTRICT JUDGE