| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CR-69 |
| | ) | (VARLAN/GUYTON) |
| JOHN REECE ROTH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on Defendant Roth's Motion for Release Pending Appeal [Doc. 85; *see also* Doc. 86]. The government objects to this motion [Docs. 84; 87]. The Court has carefully considered the pending motion and relevant filings, and for the reasons stated herein, defendant's motion will be granted.

**I.    Background**

On September 3, 2008, Defendant John Reece Roth was convicted by a jury of sixteen counts of various violations of the Arms Export Control Act ("AECA") and one count of wire fraud. On July 1, 2009, defendant was sentenced to a term of imprisonment of 48 months as to each count, to be served concurrently. Prior to the sentencing hearing, in anticipation of a possible term of imprisonment, defendant filed his Motion for Release Pending Appeal [Doc. 85]. After defendant was sentenced, the Court heard oral arguments on the pending motions and took the matter under advisement.

## II. Analysis

### A. Legal Standard for Release Pending Appeal

The Bail Reform Act of 1984, 18 U.S.C. §3143(b)(1), governs release pending appeal of a criminal conviction and provides in relevant part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The burden is on the defendant to demonstrate that the requirements of § 3143(b) have been met. *See id.* at 1233-34. The government argues that defendant must prove each element of § 3143(b) by clear and convincing evidence. However, the statute is written in such a way that the clear and convincing standard only applies to the first element, that is, whether defendant likely to flee or pose a danger to the safety of any other person or the community if released. See 18 U.S.C. § 3143(b)(1)(A). The defendant is only required to

2

prove that the appeal is not for the purpose of delay and that the appeal raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process by a preponderance of the evidence. *See United States v. Meyers*, 95 F.3d 1475, 1489 (10th Cir. 1996) (citing *United States v. Affleck*, 756 F.2d 944, 953 & n.15 (10th Cir. 1985)); 8A Am. Jur. 2d Bail and Recognizance § 71. *But see United States v. Abdallah*, 2009 WL 1918401, at *2-3 (S.D. Tex. July 1, 2009) (applying the clear and convincing standard to the substantial question prong of § 3143(b)).

The government conceded at the hearing, and the Court agrees, that this defendant is not likely to flee, nor would his release pending appeal pose a risk to the community. Additionally, the government does not argue that defendant's appeal is for the purpose of delay and the Court finds no evidence that it is. Accordingly, the remaining question for the Court is whether the appeal raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

"[A]n appeal raises a substantial question when the appeal presents a close question or one that could go either way and that the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1182

(6th Cir. 1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985) (internal quotations omitted). A substantial question is "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985), *see also United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985).

Importantly, the Sixth Circuit has held that 18 U.S.C.§ 3143(b)(1)(B) "does not require the district court to find that it committed reversible error" for it to find that the appeal raises a substantial question. *Pollard*, 778 F.2d at 1181-82. Nor must the court find that defendant is likely to prevail on appeal. *Powell*, 761 F.2d at 1234.

### B. Substantial Question of Law or Fact

Defendant argues that his appeal raises four substantial questions of law or fact, specifically: (1) whether the items covered by the Indictment were defense services or technical data directly related to a defense article as those terms are defined in the United States Munitions List ("USML"); (2) whether or not there was sufficient evidence to prove that the defendant willfully violated the AECA; (3) whether the Court erred in refusing to instruct the jury on ignorance of the law as the defendant requested; and (4) whether the Court was in error in denying the defendant's motion to strike references in the Indictment to the national security interest of the United States.

The Court determines that there is a substantial question regarding the definition of willfully applicable to the AECA and the related issue of the extent to which ignorance of the law is a defense because there is a circuit split and the Sixth Circuit has not decided the

4

issue.[1] Because the Court finds that this substantial question justifies defendant's release on bond pending appeal, the Court finds it unnecessary to address the other issues defendant alleges raise a substantial question.

The government recognizes that, "There is a split between several circuits regarding the definition of willful intent in export cases. A few other circuits have internally inconsistent definitions of the phrase, and still other circuits, such as the Sixth Circuit, have not yet made any pronouncements on the subject." [Doc. 51 at 10.] However, the government argues that there is no substantial question because there is a clear trend toward the broader definition of willfulness and therefore, it is not a close question or one that could be decided either way.

All circuits which have addressed the issue of the level of knowledge required for a violation of the AECA have determined that such violations are specific intent crimes and require at least knowledge that the activity is unlawful. However, several circuits apply a stricter definition of willful, requiring more specific knowledge, that is, that defendant knew that the items he exported were on the USML and/or that he knew he was required to have a license to export them. The Court has reviewed the available case law and determines that the level of knowledge defendant must have regarding the illegality of his action is an undecided issue and that there is not a clear trend such that the question could not be

---

[1]The Court notes that it previously was required to determine the appropriate definition of willfulness in order to instruct the jury. The Court considered the case law cited in the remainder of this opinion and gave an instruction which it believes is an accurate statement of the law. Despite the Court's formulating a definition of willfulness for the purpose of instructing to jury, the Court does not believe that the question regarding the definition of willfulness has been decided.

5

answered either way. The following summary of the case law from the circuits which have considered the definition of willful was it applies to the AECA shows that there remains a substantial question of law.

### 1. First Circuit

The First Circuit has determined that a defendant willfully violates the AECA if he knows that his conduct is unlawful, thus applying the broader definition. In *United States v. Murphy*, 852 F.2d 1 (1st Cir. 1988), the defendant argued that he could not be convicted for violating the AECA because the government did not present evidence that the defendant knew he needed to register with the government or that he knew that the arms he exported to Ireland were on the USML. *Id.* at 7. The First Circuit determined that to prove the specific intent required for a conviction under the AECA, the government only was required to prove that the defendant "voluntarily and intentionally violated a known legal duty." *Id.* Thus, the First Circuit applies the broader definition of willfulness.

### 2. Second Circuit

The Second Circuit suggests that willful exportation requires for defendant to know more than simply that his conduct is unlawful, including some knowledge of the licensing regulations, but it is not clear how much knowledge of the actual regulations governing export controlled items defendant must have. In *United States v. Smith*, 918 F.2d 1032 (2d Cir. 1990), the defendant challenged the jury instruction regarding the knowledge required for a conviction under the AECA. The Second Circuit held that the instructions were sufficient because, "The jury was told that defendant must have known that the helicopters

6

to be exported were subject to the licensing requirements of the Arms Export Control Act and that he intended to export them in a manner inconsistent therewith." *Id.* at 1038 (citing *United States v. Durrani*, 835 F.2d 410, 423 (2d Cir. 1987). In *Durrani*, the court affirmed a jury verdict when the jury was instructed that they were required to find that the defendant "knew he was required to obtain an export license before causing defense articles to be exported," and that he "intentionally failed to do so." 835 F.2d at 423.

This discussion suggests that a defendant must have at least some knowledge about the licensing scheme and regulations to be convicted. However, at least one court outside of the Second Circuit has interpreted these cases as not requiring "specific knowledge of each and every aspect of the law," specifying that it is not an essential element for the defendant to know that the exported items were on the USML. *United States v. Quinn*, 403 F. Supp. 2d 57, 63 (D.D.C. 2005) (discussing *Smith* and *Durrani*).

### 3. Third Circuit

The Third Circuit has applied the broader approach, requiring only that the defendant know that his actions in exporting a controlled item were unlawful. In *United States v. Tsai*, 954 F.2d 155 (3d Cir. 1992), the defendant challenged the jury charge, including the supplemental instruction in response to a jury question. Defendant contended that the two instructions together were confusing and that the supplemental instruction lessened the proof requirement of the statute and, accordingly, was an inaccurate statement of the law. *Id.* at 160-62. The district court initially instructed the jury that,

7

> "The government must show that the defendant knew that the export was illegal, but it does not have to show that he knew all of the specifics of the law or was a lawyer or ever read the law or even the U.S. Munitions List. . . . all they have to show is that he was aware from whatever source that a license was required."

*Id.* at 160 n.3. In response to a question from the jury, the district court further instructed the jury that, "You do not have to find that he knew all the details of the law, but you do have to find-it has to be intentional-that is, he has to know that he cannot export that particular item from the country is basically what it comes down to." *Id.* at 160 n.4. The defendant argued that the statute requires the government to show that he had knowledge of the licensing requirements and that mere knowledge that exporting the items was against the law, as the trial court charged in its supplemental instruction, is not sufficient. *Id.* at 161.

The *Tsai* court found that the instruction given in the original charge and in the supplemental charge were substantially the same and did not cause confusion. *Id.* at 162. Additionally, the court found that the government was not required to prove that defendant had knowledge of the licensing requirement, and thus "the court did not err in instructing the jury that it could convict if it found that defendant knew that the export was illegal." *Id.* at 161 (citing *Murphy*, 852 F.2d at 7). The Third Circuit reiterated this position in *United States v. Electo-Glass Products*, 298 Fed. App'x 157 (3d. Cir. 2008), stating, "[T]he willfulness element of the AECA is established only if the defendant knew that the export was in violation of the law. The Government does not need to prove the basis of that knowledge, or that the defendant was aware of the licensing requirement." *Id.* at 160 (internal citations and quotations omitted).

### 4. Fourth Circuit

The Fourth Circuit does not interpret the AECA as requiring defendant to have knowledge that the item he exported was on the USML or that the item was designed for a military purpose, but does apply ignorance of the law as a defense. In *United States v. Hsu*, 364 F.3d 192 (4th Cir. 2004), the defendants challenged the fact that the trial court did not instruct the jury that the government had to show that the defendants knew the exported item was on the USML or that the exported item was designed for military use. *Id.* at 198 n.2. Although the Fourth Circuit did not determine the appropriate definition of willfulness, it stated that the specific knowledge requirement which defendants were suggesting is not supported by case law and noted that such specificity had been expressly rejected in *Murphy*. *Id.* (citing *Murphy*, 852 F.2d at 7 & n.6). In an unpublished decision, the Fourth Circuit stated that it assumed, but was not deciding, that willfulness, as used in the AECA, required the government to overcome a defendant's claim of ignorance of the law or a good-faith belief that he was not violating the law. *United States v. Mitchell*, No. 92-5072, 1993 WL 136996, at *6-7 (4th Cir. Apr. 30, 1993).

### 5. Fifth Circuit

The Fifth Circuit interprets the AECA to require more than a mere showing that the defendant knew his conduct was unlawful, but it may not require defendant to be aware of the particular statute and regulations he is violating. In *United States v. Hernandez*, 662 F.2d 289 (5th Cir. 1981), the Court determined that for a conviction under 22 U.S.C. § 2778, the government must show specific intent and, therefore, the trial court must instruct the jury on

9

ignorance of the law as a defense. *Id.* at 291-92; *see also United States v. Davis*, 583 F.2d 190, 193-94 (5th Cir. 1978). In reversing defendant's convictions on the two AECA counts, the Court explained, "While it is true that Hernandez' [sic] concealment of the weapons possibly supported a jury finding that he knew his conduct was unlawful, such a finding falls short of deciding that he knew he was unlawfully exporting weapons on the Munitions List." *Hernandez*, 662 F.2d at 292 (internal citation omitted).

In *United States v. Covarrubias*, 94 F.3d 172 (5th Cir. 1996), the defendant argued that his conviction should be overturned because the government did not meet its burden of showing that defendant acted with specific intent because it did not show that "he was aware of the United States Munitions List or of the duty to obtain a license in order to export the items listed on it." *Id.* at 175. The court considered the evidence that had been before the jury and determined that the government had presented sufficient evidence to show that the defendant knew he needed a license or other authorization to transport weapons to Mexico. *Id.* at 175-76. The court specifically stated that Covarrubias's case was distinguishable from Hernandez's case because for Hernandez the government had only shown that defendant had purchased weapons, concealed them, and attempted to cross the border into Mexico with the weapons. *Id.* at 175 & n.3.

      **6.**    **Seventh Circuit**

The Seventh Circuit has clearly stated that the mens rea required for a conviction under the AECA is that "the defendant voluntarily and intentionally violated a known legal duty not to export the proscribed articles" and not that he knew he was required to have an

export license. *United States v. Beck*, 615 F.2d 441, 450-51 (7th Cir. 1980) (citing *United States v. Lizarraga-Lizarraga*, 541 F.2d 826, 828-29 (9th Cir. 1976)).

       7.       **Eighth Circuit**

The Eight Circuit seems to require that a defendant know that the items which he exported are on the USML and that exportation of them requires a license. In *United States v. Gregg*, 829 F.2d 1430 (8th Cir. 1987), the court noted that the elements for a conviction under the AECA are that the defendant knowingly and willfully exported an item on the USML with the necessary intent and without a license. *Id.* at 1437. The instruction given by the trial court regarding defendant's knowledge "directed acquittal if the jury was not satisfied beyond a reasonable doubt that the defendant knew that the items exported were on the Munitions List and required a license." *Id.* at 1437 n.14. *But see Murphy*, 853 F.2d at 7 n.6 (stating it did not interpret *Gregg* as requiring defendant to know that the items exported were on the USML, but only to require that defendant voluntarily and intentionally violated a known legal duty).

       8.       **Ninth Circuit**

The Ninth Circuit requires that the defendant knew that his actions were unlawful, but despite other circuits' reliance on its case law, it has not determined how much knowledge of the law itself is required. In *United States v. Lizarraga-Lizarraga*, 541 F.2d 826 (9th Cir. 1976), the court interpreted the statute making it a crime to export items on the USML as a specific intent crime requiring "a voluntary, intentional violation of a known legal duty not to export the proscribed articles." *Id.* at 829. The *Lizarraga* court did not address whether

11

specific knowledge of the items' inclusion on the USML or the necessity of a license are required. As a result, some circuits have relied upon this opinion to support the broader definition of willfulness, *see Murphy*, 852 F.2d at 7; *Beck*, 615 F.2d at 450 (same), while other circuits which apply the stricter definition have cited *Lizarraga* in support of their position, *see United States v. Davis*, 583 F.2d 190 (5th Cir. 1978) (citing *Lizarraga* in support of a requirement of specific intent in a circuit which requires the government to show that defendant knew that he needed either a license or other form of authorization for legal exportation). In *United States v. Henderson*, 243 F.2d 1168 (9th Cir. 2001), the Ninth Circuit stated that it was not deciding the issue of whether the government was required to prove that defendant has knowledge of the specific regulations at issue, only that the government had to prove that defendant knew his conduct was unlawful. *Id.* at 1173.

### 9. Eleventh Circuit

The Eleventh Circuit seems to require that defendant have more than mere knowledge that his actions were unlawful. In *United States v. Adames*, 878 F.2d 1374 (11th Cir. 1989), the Eleventh Circuit stated that a conviction under the AECA required a showing that the defendant knew that it was unlawful to export the items. *Id.* at 1377. Although this seems to state a broader definition of willfulness, the court's analysis suggests that it may have actually applied a stricter definition. After discussing the facts of the case, the court stated, "Though it reasonably could be inferred from [the defendant's] suspicious conduct that she was aware of the generally unlawful nature of her actions, that state of mind is insufficient to sustain a finding of guilt under a statute requiring specific intent." *Id.* (citing *United States*

12

*v. Frade*, 709 F.2d 1387, 1392-93 (11th Cir.1983); *United States v. Hernandez*, 662 F.2d 289, 292 (5th Cir.1981)).

      **C.**    **Outcome Likely to Result in Reversal, a New Trial, a Sentence That Does Not Include a Term of Imprisonment, or a Reduced Sentence to a Term of Imprisonment less than the Total of the Time Already Served plus the Expected Duration of the Appeal Process**

If the substantial question regarding the level of knowledge required for a conviction under the AECA is decided in defendant's favor, that is, if the appellate court determines that this Court should have instructed the jury that the government must have proved that defendant had knowledge that the items he exported were on the USML and that he knew that he needed a license to export them or that ignorance of the law is a defense to allegations of violations of the AECA, the appellate court will likely remand the case for a new trial on the sixteen AECA convictions. Additionally, a finding in defendant's favor on the issue of willfulness and ignorance of the law as a defense may cause the appellate court to order a new trial on the conviction of wire fraud as well because the conduct alleged in this charge is intertwined with the conduct alleged in the AECA charges. Specifically, in regard to the wire fraud charge, the Indictment alleges that defendant "use[d] his position as an University of Tennessee Professor of Engineering to knowingly, willfully and unlawfully export, cause to be exported, and attempt to export AECA restricted technical data to a foreign national . . . ." [Doc. 1.]

However, even if an appellate court decision in defendant's favor would not result in defendant's conviction on the wire fraud count being overturned, the defendant's advisory

13

guideline range for only a conviction of wire fraud would be zero to six months. *See* U.S.S.G. § 2B1.1(a)(1). The appeals process will likely exceed that time frame. Thus, a decision in defendant's favor would lead to defendant's sentencing liability on the wire fraud count by itself to be less than the expected duration of the appeal process. Accordingly, because there is a substantial question of law that if resolved in defendant's favor would lead to a new trial and/or a reduction in defendant's sentence to less than the expected duration of the appeals process, defendant will be allowed to remain released on bond pending appeal.

**III.   Conclusion**

For the reasons discussed above, the Court finds that the defendant has satisfied the requirements of 18 U.S.C. § 3143(b) and accordingly, Defendant Roth's Motion for Release Pending Appeal [Doc. 85] is hereby **GRANTED** and defendant shall remain released on bond pending appeal.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE